IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CINDY S. STRUCK,                    :

    Plaintiff,                    :

vs.                                 :
                                         CIVIL ACTION 07-801-M
MICHAEL J. ASTRUE,                  :
Acting Commissioner of
Social Security,                    :

    Defendant.                    :


<u>MEMORANDUM OPINION AND ORDER</u>


In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits.  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 14).  Oral argument was heard on June 23, 2008.  Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983), which must be supported by substantial evidence. *Richard-son v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative hearing, Plaintiff was fifty-two years old, had completed a college education (Tr. 346), and had previous work experience as a medical assistant, music coordinator, and a counselor (Tr. 346). In claiming benefits, Plaintiff alleges disability due to "moderate spondylosis and moderate facet hypertrophic degenerative changes at L4-5 and L5-S1 with a left paracentral annular tear at L4-5, mood disorder secondary to medical condition, pain disorder associated with both psychological factors and a general medical condition, and anxiety disorder" (Doc. 8, p. 12).

Plaintiff filed a protective application for disability on February 3, 2006 (*see* Tr. 17).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Struck was capable of performing all of her past relevant work (Tr. 14-35).  Plaintiff requested review of the hearing decision (Tr. 13) by the Appeals Council, but it was denied (Tr. 7-9).

2

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Struck alleges that:  (1) The ALJ did not properly consider the opinions and diagnoses of her treating physician; and (2) the ALJ did not properly evaluate her complaints of pain (Doc. 8).  Defendant has responded to—and denies—these claims (Doc. 15).  The evidence of record follows.

On January 5, 2005, Plaintiff went to Sacred Heart Hospital Emergency Room after being involved in a motor vehicle accident in which she was hit from the rear; Struck arrived at the hospital, ambulatory, wearing a cervical collar, though she complained that her lower back hurt more than her neck (Tr. 99-105).  X-rays of the cervical spine were, essentially, normal.  On inspection, she was found to have paraspinal tenderness in the lower back and was given Motrin and Flexeril.[1]

An MRI of the cervical spine on April 5, 2005 showed "[[m]ild diffuse central spondylosis without high grade degenerative central spondylosis at any level" (Tr. 106.  The greatest degeneration was at L4-5, though there was no disc herniation.  The MRI also showed "[m]oderate facet hypertrophic degenerative changes [at] L4-L5 and L5-S1" (*id.*).

Dr. Felicia Canada saw and treated Plaintiff on four

---

[1]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

different occasions, from April 27, 2005 through January 6, 2006, for a hiatal hernia, abdominal pain, and vomiting (Tr. 107-17).

Dr. David E. LeMay, who specializes in physical medicine and rehabilitation, first examined Struck on May 31, 2005 (Tr. 159-61, 251). He noted that she was able to flex forward to touch to the mid-shin level without much discomfort, which improved her pain; she had pain with extension and quadrant loading. Struck had no difficulty walking on heels or toes; there was tenderness in the lumbar spine, though there was more "in the left lumbar paraspinous at about L4 and L5" (Tr. 160). Plaintiff had 5 out of 5 motor strength for foot dorsiflexion, EHL, foot eversion, knee flexion, knee extension, and hip flexion. "In a prone position she is tender to palpation in the left L4-5 region greater than right side. There is pain with prone extension" (*id.*). Dr. LeMay recommended daily stretching exercises, physical therapy, and he prescribed Ultracet[2] twice daily. On September 2, 2005, Plaintiff reported that physical therapy was helpful and decreasing her pain; the doctor prescribed Flexeril (Tr. 158). On January 10, 2006, Struck described her pain as two on a ten-point scale, though it increased to six with activity; the doctor noted progress, though it was coming slowly (Tr. 157). Two weeks later, Dr. LeMay gave Plaintiff a trigger point

---

[2]Ultracet is made up of acetaminophen and tramadol and is used for the short-term (5 days or less) management of pain. *See* http://health.yahoo.com/drug/d04766A1#d04766a1-whatis

injection over the right posterior sacroiliac spine for ongoing
pain (Tr. 156).  On February 23, Struck stated that her pain was
at a six, with activity increasing it to ten; the doctor noted
that her tissue sensitivity is where it was months earlier (Tr.
154).  On March 15, 2006, Plaintiff complained of pain at a level
five, going to eight occasionally; LeMay noted that she was
tender "over the left posterior sacroiliac spine (PSIS)and lower
lumbar paraspinous muscles from L4 through the PSIS" (Tr. 152).
He further noted pain with extension and quadrant loading on the
left, greater than the right; the doctor switched her medication
to Lexapro.

        Struck received physical therapy from the Sacred Heart
Rehabilitation Center from June 20, 2005 through February 23,
2006 (Tr. 118-51).  The Physical Therapist, C. Joseph Yelvington,
in a letter of March 9, 2006, wrote the following:

> I have been treating Mrs. Struck for her
> symptoms related to an MVA since 6/05.
> Unfortunately she continues to have reports
> of pain.  We have been at times been able
> [sic] reduce these, even for weeks at a time,
> but her complaints return.  We have more
> recently been working more on functional
> strengthening and spinal stabilization to
> help improve her function.  This is one of
> many approaches we have tried.
>         She has been fairly compliant with rehab
> but I requested her to f/u with a
> gynecologist regarding some symptoms and she
> has not done this.  I recommended she join a
> gym and she has yet to do this either.
>         Functionally she reports limits in
> sitting beyond 2-4 hrs, walking and certain

motions like extending her spine.  She
performs most activities quite well in
clinic:  pulling, pushing and other
strengthening and generally moves well in
clinic.  Most of her limits now seem to be
more subjective than objective.
     The best way of getting a true objective
measurement of her abilities is to have her
perform a physical capacity evaluation (PCE)
or a more thorough functional capacity
evaluation (FCE).  This will give the
clearest view of her abilities.

(Tr. 118).

Plaintiff received chiropractic help from Charles L. Fulton

from February 3, 2005 through March 23, 2006 (Tr. 162-214).  In a

letter from March 23, 2006, Fulton wrote, in part, as follows:

     After a thorough examination and review
of her x-rays, I diagnosed Ms. Struck with
sprain/strain of the cervical spine,
sprain/strain of the lumbar spine, lumbalgia,
cephalgia, thoracic pain syndrome, and
cervical, thoracic, and lumbar segmental
dysfunction.
     I proceeded to treat Ms. Struck with
chiropractic adjustments and soft tissue
therapies during a two-month period of time.
During that time, the patient had no real
improvement from the lower back pain, and the
patient and I agreed that she should seek
further care to see if improvement could be
made with other forms of treatment.  She
proceeded to have an MRI of her lower back on
April 5, 2005, in which those findings show a
moderate disc bulge at the L4/L5 level, with
hypertrophic degenerative facet changes at
the L4/L5 and L5/S1 levels.  Otherwise, there
was no disc herniation or pressure on the
exiting nerve routes at those levels.
     I did recently see the patient on a
visit where I treated her daughter, and the
patient did state that she was continuing

6

> with physical therapy at this time, but was
> still having rather intense lower back pain.
> At this point, I feel this patient is unable
> to stand for any long period of time, lift
> any significant weight, walk for a long
> distance, or sit for any length of time.
> However, mentally, this patient is normal.
>      As a result, I feel this patient, in my
> opinion, would fall into the disability
> category due to her intense lower back pain.
> Until that improves, she is unable to perform
> any physical activities.

(Tr. 162).

On April 6, 2006, Psychologist Kimberly Whitchard examined Plaintiff for symptoms of depression following her car accident (Tr. 214-18).  The Psychologist noted that Struck's affect was appropriate to conversational thought and content; her mood was depressed.  Thought processes were intact; insight, judgment, and memory were all good.  Whitchard diagnosed Plaintiff to have a mood disorder secondary to her medical condition and Anxiety Disorder NOS; the Psychologist indicated that her prognosis was good if her physical pain could be treated.

Medical records show that Plaintiff was seen at Christian Counseling Ministry for depression on three occasions between March 14 and April 10, 2006 (Tr. 219-21).

On April 10, 2006, Struck underwent a consultative examination by Dr. John B. Douglas, a Rheumatologist, who noted that she had full range of motion, without pain, in all of her extremities (Tr. 222, 250).  Plaintiff had twenty degrees lateral

flexion in her lumbar spine with pain; she also had anterior
flexion of eighty degrees with some paravertebral muscle spasm
and discomfort.  Strength was 5/5; Plaintiff could heel and toe
walk.  Dr. Douglas's impression was mild-to-moderate low back
pain.  He noted that he reviewed the other evidence of record in
making his assessment.

Office notes from Dr. Felicia Canada show that she examined
Plaintiff on March 2 and April 20, 2006 for complaints of chronic
back pain and depression (Tr. 266-67).

Medical records from Dr. David E. LeMay show that he saw
Struck on May 18, 2006; she reported doing her exercises and
walking a mile daily (Tr. 265).  The doctor noted that the Lexpro
was helping with her depression; she denied lower extremity
weakness or numbness.  LeMay noted decreased range of motion in
all planes as well as tenderness to palpation over the PSIS
bilaterally; he prescribed Ultram[3] for her pain.  On July 26,
Plaintiff was experiencing no pain in two-thirds of the area,
while the remaining third hurt at a level of six (Tr. 260).  On
August 18, Struck reported having had some flare-ups in pain,
mostly in the lower back and tailbone, saying she had been doing
a good bit of traveling; LeMay noted that she was tender to
palpation near the posterior superior iliac spine bilaterally

---

[3]Ultram is an analgesic "indicated for the management of moderate
to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed.
2000).

(Tr. 258).

On August 23, 2006, Eric L. Frank, a Chiropractor, examined Plaintiff and found her to have the following lumbar ranges of motion:  flexion of seventy degrees, extension of ten degrees with pain, right and left lateral flexion of twenty degrees, and right and left rotation of twenty degrees (Tr. 268-72).  Lower extremity motor function tested full and strong bilaterally. Valsalva's maneuver produced pain in the lower back; palpation revealed bilateral SI joint tenderness, exquisite Interspinous tenderness from levels L3 through L5/S1.  The Frank diagnosis was low back pain and disk protrusion at L4/L5.  He recommended a course of therapy which he thought should produce fifty percent improvement within two-to-three weeks.

On September 1, 2006, Dr. LeMay completed a residual functional capacity form in which he indicated that, during an eight-hour day, Struck could walk, stand, and sit for less than one hour; she was capable of lifting less than five pounds on only an occasional basis (Tr. 253-54).  Plaintiff was unable to bend and would require rest periods, for five-to-ten minutes, every hour; Dr. LeMay stated that Plaintiff was disabled from full-time employment and had been for more than a year.

An Orthopedic Consultative Examination was conducted on November 30, 2006, by Dr. Raymond Fletcher who completed a range of motion (hereinafter *ROM*) chart which indicated that Struck had

less than normal extension (50 of 60) in her cervical spine (Tr. 286-94).  Her dorsolumbar spine was limited with regard to flexion, extension, right and lateral flexion and rotation; she had full ROM in both shoulders, elbows, forearms, knees, ankles, wrists, hands, and fingers.  Her hip ROM was eighty percent of normal on both the right and left sides; she had normal dexterity and grip strength.  It was Dr. Fletcher's opinion that Plaintiff could stand, walk, and sit, each, for two hours at a time and up to seven hours during an eight-hour day; he further expressed the opinion that she could lift and carry up to ten pounds constantly, twenty-five pounds frequently, and fifty pounds on an occasional basis.  The doctor further indicated that Struck could use pushing and pulling of leg controls, climb, stoop, kneel, crouch, and crawl on an occasional basis; she should not be exposed to vibration or working in high places except occasionally.  In his summary, the Orthopedist stated the following:

> This is a 52 year old lady with chronic mechanical lumbar pain since a motor vehicle accident in 1/05.  The examination reveals mechanical lumbar pain without radiculopathy or radiculitis. . . . This evaluation reveals that the subjective complaints correlate with the objective findings.  The subjective complaints are supported by some abnormal musculoskeletal findings.  This claimant's described work impairment outweighs the work impairment found during this evaluation. There is some evidence of secondary gain. The pain pattern (lumbar) is well

established, will respond to standard
treatment modalities.  This claimant has
previous work experience which coincides with
current physical limitations.  This claimant
will have some difficulty with activities
requiring bending, lifting, stooping,
crawling, and climbing.  She will have some
difficulty with prolonged standing and
walking.  She will have some difficulty with
prolonged sitting.  She will have little
difficulty with repeated use of arms and
hands overhead.  She will have little
difficulty with repetitive use of hands.  A
physical working environment may cause
temporary aggravation of lumbar pain.  The
claimant demonstrated no nonphysiologic
findings, exhibited good voluntary effort,
and was cooperative during this evaluation.
        Physical Demand Classification (U.S.
Department of Labor):  medium.
        The medical evidence of record provided
by the [Social Security Administration] was
reviewed and those findings were considered
in the overall assessment of the patient.

(Tr. 288).

    At the first evidentiary hearing, Struck testified that she
quit working in January 2005 because of her motor vehicle
accident (Tr. 352-70).  Plaintiff testified that she had been
involved in physical therapy exercises, stretching and
strengthening, every day for almost two years.  Before the
accident, she walked three miles a day but now her back begins to
burn and she has to sit or lie down.  Struck testified that her
length of stride was not normal and that she cannot walk at a
normal pace.  On a good day, her pain is a six on a ten-point
scale, though on a bad day, it can be eight or nine; this is

usually brought on by doing too much the day before.  Plaintiff
stated that she can do light housework, but cannot do any
leaning, lifting or pushing; she can no longer do yard work,
vacuuming, mopping, or heavy sweeping.  If she does these chores,
she has to take more pain medication and rest with ice packs; she
experiences pain, every day, all the time.  She needs to rest
five or ten minutes hourly.  The stress from the accident has
caused a hiatal hernia and acid reflux; medication helps, but is
very expensive.  Struck has experienced depression and anger and
has sought counseling to combat them.  At the second hearing,
Plaintiff testified that her pain was in her lower back,
radiating primarily to the left; she has an equal number of good
and bad days (Tr. 332-45, 347).  Struck testified that she had
had to quit taking pain medications and muscle relaxers because
they were irritating her stomach.  She cannot walk or sit for
very long and has to rest every half hour or so.

Richard W. Freeman, a vocational expert (hereinafter *VE*),
testified at the second hearing that he had been present at the
hearing and had familiarized himself with the records in her file
(Tr. 345-49).  Freeman identified and described her previous work
experience.  He then testified, upon questioning by the ALJ, that
the physical capacities evaluation completed by Dr. Fletcher
indicated that she could do all of her previous work.  He
indicated that the physical capacities evaluation completed by

Dr. LeMay would preclude her from all work; finally, the VE
stated that if Struck's testimony were found to be fully
credible, she would be precluded from all work.

The ALJ summarized all of the medical evidence and assigned
determinative evidentiary weight to the opinions and conclusions
of Orthopedic Dr. Fletcher (Tr. 29).  He assigned no weight to
Chiropractor Dr. Fulton's opinions (Tr. 29) or to the PCE
completed by Dr. LeMay (Tr. 30).  The ALJ went on to find that
Plaintiff's testimony regarding her symptomatology and level of
restrictions was not credible (Tr. 32).  Based on the VE's
testimony regarding Dr. Fletcher's opinions of Struck's
abilities, the ALJ found that Plaintiff could return to all of
her past relevant work (Tr. 34).

In bringing this action, Plaintiff first claims that the ALJ
did not accord proper legal weight to the opinions, diagnoses and
medical evidence of her physician.  Struck specifically refers to
the conclusions of Dr. LeMay (Doc. 8, pp. 8-10).  It should be
noted that "although the opinion of an examining physician is
generally entitled to more weight than the opinion of a non-
examining physician, the ALJ is free to reject the opinion of any
physician when the evidence supports a contrary conclusion."
*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[4] *see*

_____

[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of
Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent
decisions of the former Fifth Circuit rendered prior to October 1,

*also* 20 C.F.R. § 404.1527 (2007).

The ALJ rejected Dr. LeMay's conclusions in his PCE because they were inconsistent with his own treatment notes, inconsistent with the findings of Dr. Fletcher, and inconsistent with Struck's own testimony regarding her abilities (Tr. 30).  The ALJ stated:

> Dr. LeMay's treatment records contain no objective clinical examination findings to support the severe physical restrictions he imposed upon the claimant, particularly in terms of sitting, standing, and walking.  The limitations on those specific activities, "less than one hour," would indicate that the claimant possessed an impairment of such severity that would certainly manifest in objective examination findings such as significant loss of range of motion, muscle weakness, muscle spasm, or sensory or motor dysfunction.  However, Dr. LeMay has recorded no such findings and no treating or examining physician has opined that the objective diagnostic testing has established that the claimant's lumbar spine impairment is of such severity as to produce disabling pain. Additionally, the claimant's reported activities of daily living, which include approximately two hours per day of light household chores, shopping, exercising, meal preparation, and other activities, including frequent traveling, that cannot be performed without sitting, standing, and walking, or some combination thereof, far exceeds the limitations imposed by Dr. LeMay.  The Assessment of Physical Residual Functional Capacity also contains an internal inconsistency in that Dr. LeMay restricted the claimant to less than one hour each of standing and walking, yet he placed no restriction on the claimant's climbing of stairs or ladders.

_____

1981.

(Tr. 30-31).  The Court finds substantial support for the ALJ's
conclusions regarding Dr. LeMay's opinions of Plaintiff's
abilities and limitations.  Though Struck has argued otherwise,
the ALJ has given very specific, explicit reasons for rejecting
her treating physician's conclusions.  This claim is of no merit.

     Plaintiff next claims that the ALJ did not properly evaluate
her complaints of pain and limitation (Doc. 8, pp. 6-7).  The
standard by which the Plaintiff's complaints of pain are to be
evaluated requires "(1) evidence of an underlying medical
condition and either (2) objective medical evidence that confirms
the severity of the alleged pain arising from that condition or
(3) that the objectively determined medical condition is of such
a severity that it can be reasonably expected to give rise to the
alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.
1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.
1986)).  The Eleventh Circuit Court of Appeals has also held that
the determination of whether objective medical impairments could
reasonably be expected to produce the pain was a factual question
to be made by the Secretary and, therefore, "subject only to
limited review in the courts to ensure that the finding is
supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d
1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d
428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th

15

Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R.. 404.1529(a) (2007).

The ALJ found that Plaintiff experienced some pain and functional limitation because of her spine impairment, but not to the extent alleged (Tr. 32).  As support for his conclusion, he correctly points out that Drs. LeMay, Canada, and Fletcher all "failed to document clinical findings such as significant, sustained loss of range of motion, muscle weakness, muscle atrophy, muscle spasm, or sensory or motor disruption" (*id.*). Furthermore, even though Struck had MRI evidence showing an impairment, there was no "severe acute or chronic vertebrogenic related disorders, such as disc herniation, nerve root impingement, or spinal stenosis" (*id.*).  The ALJ also pointed out Plaintiff's reluctance to use pain medications and the lack of evidence showing that the medications would not relieve or

control the pain.

Plaintiff, in argument, has pointed to the objective evidence of the underlying medical condition (Doc. 8, p. 7). This alone, however, does not prove that the pain—and the limitations resulting therefrom—is as severe as alleged.  The Court finds substantial support for the ALJ's conclusion otherwise.

Struck has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 24th day of June, 2008.


                           s/BERT W. MILLING, JR.
                           UNITED STATES MAGISTRATE JUDGE